Walter Benzija, Esq.
Neal W. Cohen, Esq.
HALPERIN BATTAGLIA BENZIJA, LLP
40 Wall Street – 37th Floor
New York, NY 10005
Phone:  (212) 765-9100; Fax: (212) 765-0964
Wbenzija@halperinlaw.net
Ncohen@halperinlaw.net

*Counsel to defendants Elly Garcia and*
*    53 Montrose Ave. Realty Corp.*

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------------------------x

In re:

FREDDY A. GARCIA,

                         Debtor.

------------------------------------------------------------x

Chapter 11 Case
Case No. 15-42243 (NHL)

FREDDY A. GARCIA,

         Plaintiff/Counterclaim Defendant,

         against

ELLY GARCIA and 53 MONTROSE
AVE. REALTY CORP.,

         Defendants/Counterclaim Plaintiffs.

------------------------------------------------------------x

Adv. Pro. No. 15-01092 (NHL)

### ANSWER, AFFIRMATIVE DEFENSES AND COUNTERCLAIMS OF DEFENDANTS ELLY GARCIA-MCCOYAND 53 MONTROSE AVE. REALTY CORP.

       Elly Garcia-McCoy sued herein as Elly Garcia ("Elly") and 53 Montrose Ave. Realty

Corp. ("53MARC") (collectively the "Defendants"), for their Answer, Affirmative Defenses and

Counterclaims, in response to the *Complaint*, dated July 14, 2015 (the "Complaint"), as follows:

## NATURE OF THE ACTION

1.      Paragraph 1 of the Complaint contains statements to which Defendants are not required to respond; otherwise, to the extent Defendants are required to respond to such allegations, Defendants deny same and refer to the Complaint for a statement of its content (without admitting same).

## JURISDICTION AND VENUE

2.      Defendants lack knowledge or information sufficient to form a belief as to the truth of the matters asserted in paragraph 2 of the Complaint and therefor deny same.

3.      Defendants lack knowledge or information sufficient to form a belief as to the truth of the matters asserted in paragraph 3 of the Complaint and therefor deny same.

4.      Defendants lack knowledge or information sufficient to form a belief as to the truth of the matters asserted in paragraph 4 of the Complaint and therefor deny same.

## PARTIES

5.      Defendants admit the allegations of paragraph 5 of the Complaint and refer to the documents referenced for a statement of their content (without admitting same).

6.      Defendants admit the allegations contained in Paragraph 6 of the Complaint.

7.      Defendants admit the allegations contained in Paragraph 7 of the Complaint to the following extent: that as of October 10, 2003, 53MARC was a domestic corporation organized and duly existing under the laws of the State of New York of which Elly is the sole shareholder and 53MARC, by Bargain and Sale deed dated October 29, 2003, has been the exclusive title holder of record of the premises located at 53 Montrose Avenue, Brooklyn, New York (the "Premises").

## **BACKGROUND**

8.      Defendants lack knowledge or information sufficient to form a belief as to the truth of the matters asserted in paragraph 8 of the Complaint; and therefor deny same.

9.      Defendants lack knowledge or information sufficient to form a belief as to the truth of the matters asserted in paragraph 9 of the Complaint; and therefor deny same.

10.      Defendants lack knowledge or information sufficient to form a belief as to the truth of the matters asserted in paragraph 10 of the Complaint; and therefor deny same.

11.      Defendants admit the allegations of paragraph 11 of the Complaint to the following extent:  that in or about September 2003, Plaintiff Freddy A. Garcia ("Plaintiff") informed Elly that due to issues with his credit, he was incapable of securing financing necessary to continue to maintain and operate the Premises.  As a result, Plaintiff further informed Elly that because title to the Premises would be transferred to Elly upon his death, he had decided to make an immediate and unconditional pre-testamentary transfer of title to the Premises to Elly believing that Elly could better obtain financing necessary to continue to maintain and operate the Premises.  Accordingly, by Warranty Deed dated October 29, 2003, title to the Premises was transferred from Plaintiff to Elly.  On the advice of counsel, by Bargain and Sale Deed with Covenant against Grantor Acts, dated October 29, 2003, Elly transferred title to the Premises to 53MARC, an entity wholly owned by her.  In reliance upon the representations made by Plaintiff to Elly that the transfer of title was unconditional, also on October 29, 2003, 53MARC obtained secured financing in connection with the Premises, guaranteed personally by Elly, the proceeds of which was used, in part, to pay off a prior $162,500 loan obligation Plaintiff incurred in November of 2008 that was secured by a mortgage on the Premises.  Also based upon Plaintiff's representation that the transfer was unconditional, 53 MARC thereafter obtained additional secured financings, in connection with which Elly is listed as a personal guarantor, and issued

mortgages in connection therewith.  Also in reliance on the upon the representations made by

Plaintiff to Elly that the transfer of title was unconditional, from October 29, 2003 to present,

Elly has expended substantial sums of money from her personal savings to cover the operating

expenses associated with the Premises whenever the rents collected from tenants at the Premises

did not generate enough income (i.e., virtually every month), including without limitation, loan

payments and repairs to the Premises; otherwise denied.

      12.      Defendants admit the allegations contained in Paragraph 12 of the Complaint to

the following extent: that by Warranty Deed dated October 29, 2003, title to the Premises was

transferred from Plaintiff to Elly.  By Bargain and Sale Deed with Covenant against Grantor Acts,

dated October 29, 2003, Elly transferred title to the Premises to 53MARC.  Based upon the

representations made by Plaintiff to Elly that his transfer of title to the Premises to her was

unconditional, on October 29, 2003, 53MARC obtained secured financing in connection with the

Premises, guaranteed personally by Elly, which was used, in part, to pay off a prior $162,500

loan obligation of Plaintiff secured in November of 2008 that was secured by a mortgage on the

Premises.  Also based upon Plaintiff's representation that his transfer of title to the Premises to

her was unconditional, 53 MARC thereafter obtained additional secured financing, based in part

on personal guarantees issued by Elly, and issued mortgages thereon.  In addition to the personal

guarantees issued by Elly in connection with subsequent financings, from October 29, 2003 to

present, Elly has expended substantial sums of money from her personal savings to cover the

operating expenses associated with the Premises whenever the rents collected from tenants at the

Premises did not generate enough income (i.e., virtually every month)[1], including without

---

[1]      The shortfall in rents was largely caused by Plaintiff's active diversion of rents for his own use, occupancy of an apartment in the Premises rent-free and refusal to pay rent in connection with the commercial space in which he operated a retail business.

limitation, $6,400 in mortgage recording taxes, monthly loan installment payments and costs of repairs to the Premises; otherwise denied.

13.     Defendants admit the allegations contained in Paragraph 13 of the Complaint to the following extent: that by Bargain and Sale Deed with Covenant against Grantor Acts, dated October 29, 2003, Elly transferred title to the Premises to 53MARC; otherwise denied.

14.     Defendants admit the allegations contained in Paragraph 14 of the Complaint to the following extent: that by Installment Promissory Note dated October 29, 2003 and Mortgage and Security Agreement dated October 29, 2003 (the "MSA"), 53MARC entered into a financing transaction with Meritt Funding, Inc. ("Meritt") by which it secured financing in the amount of $320,000; that in connection with the MSA, Elly guaranteed to Meritt the prompt payment and performance when due of all of 53MARC's obligations under the MSA; otherwise denied.

15.     Defendants admit the allegations contained in Paragraph 15 of the Complaint to the following extent: that by Installment Note and Mortgage, both dated December 1, 2004, 53MARC entered into a second financing transaction with Meritt by which 53MARC secured additional financing in the amount of $45,000 for which Elly personally guaranteed to Meritt of the prompt payment and performance when due of all of 53MARC's obligations thereunder; otherwise denied.

16.     Defendants admit the allegations contained in Paragraph 16 of the Complaint to the following extent: that on December 1, 2004, 53MARC and Meritt executed, among other documents, a Consolidation, Extension and Modification Agreement and refer to the terms thereof, and all amendments thereto as well as the attachments and exhibits incorporated therein, for their full content, provisions and meaning, and deny the allegations to the extent inconsistent therewith.

17.     Defendants admit the allegations contained in Paragraph 17 of the Complaint to the following extent: that on November 7, 2005, 53MARC entered into a financing transaction with HFR Commercial Solutions, Inc. ("HFR") by which 53MARC obtained financing in the amount of $438,750.00 secured by a Mortgage on the Premises issued by 53MARC and refer to the terms and conditions of the documents referenced as well as the attachments and exhibits incorporated therein, for their full content, provisions and meaning, and deny the allegations to the extent inconsistent therewith.

18.     Defendants admit the allegations contained in Paragraph 18 of the Complaint to the following extent: that on September 25, 2008, HFR and Bayview Loan Servicing, LLC ("Bayview") executed an Assignment of Mortgage and refer to the terms and conditions of the document referenced as well as the attachments and exhibits incorporated therein, for their full content, provisions and meaning, and deny the allegations to the extent inconsistent therewith.

19.     Defendants admit the allegations contained in Paragraph 19 of the Complaint to the following extent: that on December 4, 2012, Bayview executed a Corporate Assignment of Mortgage in favor of 53 Montrose YMJ LLC and refer to the terms and conditions of the document referenced as well as the attachments and exhibits incorporated therein, for their full content, provisions and meaning, and deny the allegations to the extent inconsistent therewith.

20.     Defendants admit the allegations contained in Paragraph 20 of the Complaint to the following extent: that on September 3, 2013, 53 Montrose YMJ LLC commenced an action in the Supreme Court of the State of New York, in and for Kings County, bearing index number 505206/2013 (the "Foreclosure Action"), by filing a summons and complaint naming 53MARC and others as defendants and refer to the document referenced as well as the attachments and exhibits incorporated therein, for their its full content, provisions and meaning, and deny the allegations to the extent inconsistent therewith.

21.     Defendants admit the allegations of paragraph 21 of the Complaint to the following extent: that paragraph 11 of the complaint in the Foreclosure Action alleges that "On or about April 15, 2009, Defendant Montrose entered into a modification agreement (the "Modification Agreement") with Bayview thereby increasing the amount then due under the Note to $610,214.14. . . ."; otherwise denied.

22.     Defendants admit the allegations of paragraph 22 of the Complaint to the following extent: that paragraph 15 of the complaint in the Foreclosure Action alleges that "Defendant Montrose has failed to comply with the terms of the Note and the Mortgage, as Defendant Montrose has failed to make monthly payments of principal and interest due under the Note and the Mortgage beginning on February 1, 2009 and continuing through the date hereof."; otherwise denied.

23.     Defendants admit the allegations of paragraph 23 of the Complaint to the following extent: that neither Elly nor 53MARC ever notified Plaintiff regarding the payment status of any mortgage executed by 53MARC after the Premises were transferred to Elly on October 29, 2003 because the transfer was unconditional and thus neither Elly nor 53MARC had any obligation to do so; otherwise denied.

24.     Defendants admit the allegations of paragraph 24 of the Complaint to the following extent: that Plaintiff has resided within the Premises since at least October 29, 2003 without having paid even one penny in rent and has at times lived at the Premises under assumed names; otherwise defendants lack knowledge or information sufficient to form a belief as to the truth of the matters asserted in paragraph 24 of the Complaint and therefor deny same.

25.     Defendants deny the allegations of paragraph 25 of the Complaint to the extent that Plaintiff alleges that he transferred only nominal title to the Premises and refer to the

7

Warranty Deed dated October 29, 2003, as well as any attachments and exhibits thereto, for their full content, provisions and meaning.

26.     Defendants deny the allegations of paragraph 26 of the Complaint.

27.     Defendants admit the allegation of paragraph 27 of the Complaint to the following extent: that on September 30, 2003, Plaintiff executed an Assignment of Leases in favor of Elly and refer to the document referenced for it full content, provisions and meaning; otherwise denied.

28.     Defendants admit the allegations of paragraph 28 of the complaint to the following extent: that following Plaintiff's execution of the Warranty Deed dated October 29, 2003 unconditionally transferring title to the Premises to Elly, neither of the Defendants has provided an accounting to Plaintiff because Defendants have had no obligation to do so; otherwise denied.

29.     Defendants admit the allegations of paragraph 29 of the Complaint to the following extent: that pursuant to the clear and unambiguous terms of the Warranty Deed dated October 29, 2003, from Plaintiff to Elly and the Bargain and Sale Deed with Covenant against Grantor Acts, dated October 29, 2003, from Elly to 53MARC, 53MARC has been the only title holder and owner of the Premises since October 29, 2003; otherwise denied.

30.     Defendants lack knowledge or information sufficient to form a belief as to the truth of the matters asserted in paragraph 30 of the Complaint and therefor deny same.

31.     Defendants deny the allegations of paragraph 31 of the Complaint.

32.     Defendants deny the allegations of paragraph 32 of the Complaint.

33.     Defendants deny the allegations of paragraph 33 of the Complaint.

## FIRST CAUSE OF ACTION FOR DECLARATORY JUDGMENT

34.     As to paragraph 34 of the Complaint, Defendants re-allege and incorporate their responses to the paragraphs above as though set forth in full herein.

35.     Defendants deny the allegations of paragraph 35 of the Complaint and aver that Plaintiff unconditionally transferred title to the Premises to Elly as reflected in the clear and unambiguous terms of the Warranty Deed dated October 29, 2003 between Plaintiff and Elly.

36.     To the extent the allegations of paragraph 36 of the Complaint state a legal conclusion, no response is required; otherwise denied.

37.     Defendants deny the allegations of paragraph 37 of the Complaint.

## SECOND CAUSE OF ACTION FOR THE IMPOSITION OF A CONSTRUCTIVE TRUST ON THE PROPERTY

38.     As to paragraph 38 of the Complaint, Defendants re-allege and incorporate their responses to the paragraphs above as though set forth in full herein.

39.     Defendants deny the allegations of paragraph 39 of the Complaint.

40.     Defendants deny the allegations of paragraph 40 of the Complaint.

41.     Defendants deny the allegations of paragraph 41 of the Complaint.

42.     Defendants deny the allegations of paragraph 42 of the Complaint.

43.     Defendants deny the allegations of paragraph 43 of the Complaint.

44.     Defendants deny the allegations of paragraph 44 of the Complaint.

45.     Defendants deny the allegations of paragraph 45 of the Complaint.

46.     Defendants deny the allegations of paragraph 46 of the Complaint.

47.     Defendants deny the allegations of paragraph 47 of the Complaint.

## THIRD CAUSE OF ACTION FOR UNJUST ENRICHMENT
## <u>(AS TO ALL DEFENDANTS)</u>

48.     As to paragraph 48 of the Complaint, Defendants re-allege and incorporate their responses to the paragraphs above as though set forth in full herein.

49.     Defendants deny the allegations of paragraph 49 of the Complaint.

50.     Defendants deny the allegations of paragraph 50 of the Complaint.

51.     Defendants deny the allegations of paragraph 51 of the Complaint.

## <u>FOURTH CAUSE OF ACTION FOR BREACH OF FIDUCIARY DUTY</u>

52.     As to paragraph 52 of the Complaint, Defendants re-allege and incorporate their responses to the paragraphs above as though set forth in full herein.

53.     Defendants deny the allegations of paragraph 53 of the Complaint.

54.     Defendants deny the allegations of paragraph 54 of the Complaint.

55.     Defendants deny the allegations of paragraph 55 of the Complaint.

## <u>FIFTH CAUSE OF ACTION FOR AND ACCOUNTING</u>

56.     As to paragraph 56 of the Complaint, Defendants re-allege and incorporate their responses to the paragraphs above as though set forth in full herein.

57.     Defendants deny the allegations of paragraph 57 of the Complaint.

58.     Defendants deny the allegations of paragraph 58 of the Complaint.

59.     Defendants deny the allegations of paragraph 59 of the Complaint.

60.     Defendants deny the allegations of paragraph 60 of the Complaint.

61.     Defendants deny the allegations of paragraph 61 of the Complaint.

## <u>AFFIRMATIVE DEFENSES</u>

Defendants assert the following affirmative defenses and reserve the right to amend this Answer to assert other and further defenses when and if, in the course of its investigation,

discovery, or preparation for trial it becomes appropriate. By designating these matters as "defenses," Defendants do not relieve the Plaintiff of proving under the appropriate standard of proof all elements of any claim alleged. Defendants do not undertake any burdens that properly rest upon the Plaintiff, and do not suggest either that the Plaintiff does not bear the burden of proof as to such matters or that such matters are not elements that he must establish in order to make out a prima facie case against Defendants.

Defendants reserve and assert all affirmative defenses available under applicable federal or state law, including Federal Rules of Bankruptcy Procedure, Federal Rules of Civil Procedure, New York Debtor and Creditor Law, New York Civil Practice and Local Rules, and reserve the right to assert other defenses, cross-claims, and third party claims when and if they become appropriate in this action.

These defenses are set forth cumulatively and in the alternative.

## FIRST AFFIRMATIVE DEFENSE

The Complaint fails to state a claim upon which relief can be granted.

## SECOND AFFIRMATIVE DEFENSE

The Complaint violates Rules 8(a)(2) and 9(b) of the Federal Rules of Civil Procedure, made applicable to this proceeding by Federal Rules of Bankruptcy Procedure 7008(a)(2) and 7009(b). *Ashcroft v. Iqbal,* 129 S. Ct. 1937 (2009), and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007).

## THIRD AFFIRMATIVE DEFENSE

Plaintiff's claims are barred, in whole or in part, by the doctrine of laches.

## FOURTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred, in whole or in part, by the applicable statute of frauds.

## FIFTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred, in whole or in part, by the applicable statute of limitations.

## SIXTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred, in whole or in part, by the doctrine of judicial estoppel.

## SEVENTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred, in whole or in part, based on Plaintiff's lack of reasonable reliance, to the extent reliance is an element of any claim.

## EIGHTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred, in whole or in part, by the doctrines of waiver, ratification and/or estoppel (including equitable estoppel).

## NINTH AFFIRMATIVE DEFENSE

The Court lacks personal jurisdiction over the Defendants.

## TENTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred, in whole or in part, by the doctrine of unclean hands.

## ELEVENTH AFFIRMATIVE DEFENSE

Plaintiff's claims fail, in whole or in part, because Defendants did not manifest an intent to be bound by any purported oral agreement.

## TWELFTH AFFIRMATIVE DEFENSE

Plaintiff's claims fail, in whole or in part, because the parties to the alleged agreement did not assume mutual obligations.

## THIRTEENTH AFFIRMATIVE DEFENSE

Plaintiff is not entitled to equitable relief.

## FOURTEENTH AFFIRMATIVE DEFENSE

Plaintiff's claims for unjust enrichment and constructive trust are barred by the absence of any promise, reliance and/or other essential elements of such claims.

## FIFEENTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred by impermissible vagueness and unenforceability of any alleged contract, promise and/or undertaking they allege, including the absence of essential material terms.

## SIXTEENTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred because any award or relief in their favor would constitute unjust enrichment of Plaintiff.

## COUNTERCLAIMS[2]

### JURY TRIAL DEMANDED

Pursuant to Rules 13 and 18 of the Federal Rules of Civil Procedure, made applicable to this proceeding by Federal Rules of Bankruptcy Procedure 7013 and 7018, respectively, Elly Garcia ("Elly") and 53 Montrose Ave. Realty Corp. ("53MARC") hereby file their counterclaims against Freddy A. Garcia ("Freddy" or "Counterclaim Defendant"), as follows:

### PRELIMINARY STATEMENT

In 2003, twelve years ago, Freddy made a pre-testamentary unconditional transfer of the real property located at 53 Montrose Avenue, Brooklyn, New York (hereinafter the "Premises") to his daughter Elly. At the time, Freddy told Elly that he was conveying title to the Premises her because she would "eventually get it when I die." Since Freddy's unconditional transfer to Elly in October 2003, he has lived in an apartment rent free and operated a business from the

---

[2]        All prior statements are incorporated by reference under each cause of action of the Counterclaims. Counterclaims One, Two and Three are interposed in the event the Court, *arguendo*, determines that the Debtor retained beneficial ownership of the Premises despite the representations made to the Elly. The averments supporting Counterclaims One, Two and Three are therefore pled in the alternative and do not contradict 53MARC's position that it is the rightful owner of the Premises. Counterclaim Four for Conversion is not pled in the alternative and is not dependent on the Court's ruling with respect to the ownership rights.

commercial space rent free all the while collecting and improperly absconding and converting rents from tenants incontrovertibly due and owing to Elly and 53MARC.  Moreover, during the same 12 year period, Elly and her wholly owned company, 53MARC, borrowed substantial sums, with Elly incurring substantial personal liability, in order to pay off a $162,500 loan obligation (secured by a mortgage on the Premises) for which Freddy was personally liable and secure funds sufficient to operate and maintain the building.  In fact, Elly has, on numerous occasions, been forced to dip into her own savings in order continue operating and maintaining the building.

Despite the substantial sums of money Elly has already spent and the potentially great financial peril she has personally placed herself in for the benefit of the Premises over the past 12 years, Freddy asks to this Court to ignore the plain and unambiguous terms of the Warranty Deed dated October 29, 2003, by which title to the Premises was irrevocably and unconditionally transferred from him to Elly.  If Freddy's claims of beneficial ownership are to be believed, he would have defrauded numerous financial institutions that loaned money in connection with the Premises since October 2003, while having no personal liability for any such indebtedness. Freddy's after-the-fact story is just that, a story without an ounce of credibility or kernel of truth. Indeed, Freddy admitted under oath at the Section 341 Meeting of Creditors held in his bankruptcy case that he has not paid a single penny with respect to the mortgage on the Premises and since transferring ownership to Elly in October 2003 and fully expected her to be responsible for payment of any mortgages and building related expenses.

In sum, there is simply no factual or legal justification to ignore the clear and unambiguous documents underlying the transaction at issue and the conduct of the parties since that time which all point to only one conclusion – Elly Garcia and 53MARC have been the rightful and legitimate beneficial owners of the Premises since October 29, 2003.  Nevertheless, in an abundance of caution, should the Court find that beneficial title to the Premises resides with the Debtor, Elly and 53MARC bring these claims to ensure that they are made whole.

## THE PARTIES

1.      At all times relevant, Elly was and is a resident of the State of New York, residing in Brooklyn, New York.

2.      At all times relevant, 53MARC was a corporation incorporated under the laws of the State of New York having its principal place of business in Brooklyn, New York.

3.      Upon information and belief, at all times relevant, Counterclaim Defendant was and is a resident of the State of New York, residing at 53 Montrose Avenue, Brooklyn, New York.

## JURISDICTION AND VENUE

4.      This Court has jurisdiction over the subject matter of the counterclaims under 28 U.S.C. § 1367(a) because it forms part of the same case or controversy as the original suit brought by Counterclaim Defendant against Elly and 53MARC.

5.      Venue is proper in this District pursuant to 28 U.S.C. §§ 1391(a) - (d).

6.      This Court has personal jurisdiction over Counterclaim Defendant, who is a resident of Kings County, New York and has voluntarily submitted himself to jurisdiction of this Court by filing a voluntary Chapter 11 petition with the court on May 14, 2015 as well as the Adversary Complaint in this matter on July 15, 2015.

## AS AND FOR A FIRST COUNTERCLAIM
### (Fraud)

7.      Elly is the daughter of Counterclaim Defendant.

8.      By Bargain and Sale Deed with Covenant against Grantor Acts, dated August 2, 1985, title to the premises located at 53 Montrose Avenue, Brooklyn, New York (the "Premises") was transferred to Counterclaim Defendant by Francisco Gonzalez and George I. Gonzalez.

9.      On or about November 6, 1998, Counterclaim Defendant obtained secured financing in connection with the Premises from, and granted a mortgage on the Premises to, Greenpoint Bank in the amount of $162,500.

10.    In or about September 2003, Counterclaim Defendant informed Elly that due to issues with his credit, he was incapable of securing financing necessary to continue to maintain and operate the Premises, including payment of the then outstanding loan with Greenpoint Bank.

11.    Counterclaim Defendant further informed Elly that because title to the Premises would be transferred to Elly upon his death, he had decided to make an immediate and unconditional pre-testamentary transfer of title to the Premises to Elly believing that Elly could better obtain financing necessary to continue to maintain and operate the Premises.

12.    In furtherance of his decision to unconditionally transfer title to the Premises to Elly, on September 30, 2003, Counterclaim Defendant executed an Assignment of Leases whereby all right, title and interest under certain leases for occupancy at the Premise were assigned to Elly.

13.    Thereafter, by Warranty Deed dated October 29, 2003, title to the Premises was irrevocably and unconditionally transferred from Counterclaim Defendant to Elly.

14.    By Bargain and Sale Deed with Covenant against Grantor Acts, dated October 29, 2003, Elly transferred title to the Premises to 53MARC, of which Elly is the sole shareholder.

15.    Also on October 29, 2003, in reliance on Counterclaim Defendant's representations to Elly that the transfer of title to the Premises to her was unconditional, 53MARC entered into an Installment Promissory Note dated October 29, 2003 and Mortgage and Security Agreement, dated October 29, 2003, Meritt Funding, Inc. ("Meritt") whereby 53MARC borrowed the sum of $320,000 and issued a Mortgage to Meritt to secure 53MARC's payment obligations.

16.    As additional consideration for the October 29, 2003 transaction between Meritt and 53MARC, Elly personally guaranteed to Meritt the prompt payment and performance when due of all of 53MARC's obligations.

17.    Although Counterclaim Defendant no longer held title to the Premises, part of the proceeds of the October 29, 2003 transaction between Meritt and 53MARC were used to satisfy

the remaining monies due to Greenpoint Bank in connection with the $162,500 loan taken by Counterclaim Defendant in 1998.

18.     Accordingly, on December 5, 2003, and as a result of 53MARC's use of the funds received from the October 29, 2003 transaction with Meritt to pay off Counterclaim Defendant's outstanding loan, Greenpoint Bank issued a Satisfaction of Mortgage to Counterclaim Defendant.

19.     In further reliance on Counterclaim Defendant's representations to Elly in September and October 2003 that the October 29, 2003 transfer of title to the Premises to her was unconditional, by Installment Note, Mortgage and Consolidation, Extension and Modification Agreement, all dated December 1, 2004, 53MARC entered into a second financing transaction with Meritt by which 53MARC obtained additional secured financing in the amount of $45,000.

20.     Once again, as additional consideration for Meritt to enter into the December 1, 2004 transaction with 53MARC, Elly personally guaranteed to Meritt the prompt payment and performance when due of all of 53MARC's obligations thereunder.

21.     In further reliance on Counterclaim Defendant's representations to Elly in September and October 2003 that the October 29, 2003 transfer of title to the Premises to her was unconditional, on November 7, 2005, 53MARC entered into a financing transaction with HFR Commercial Solutions, Inc. ("HFR") by which 53MARC obtained financing in the amount of $438,750.00 secured by a Mortgage it issued on the Premises.

22.     As additional consideration for HFR to enter into the November 7, 2005 transaction with 53MARC, Elly personally guaranteed to HFR the prompt payment and performance when due of all of 53MARC's obligations thereunder.

23.     In further reliance on Counterclaim Defendant's representations to Elly in September and October 2003 that the October 29, 2003 transfer of title to the Premises to her was unconditional, on or about April 15, 2009, 53MARC entered into a modification agreement (the "Modification Agreement") with Bayview Loan Servicing LLC ("Bayview"), as assignee of

17

the note and mortgage with HFR, whereby the amount then due under the HFR note was increased to $610,214.14.

24.     As additional consideration for the Modification Agreement, Elly remained as a personal guarantor of the prompt payment and performance when due of all of 53MARC's obligations thereunder.

25.     Counterclaim Defendant's representations to Elly in September and October 2003 that the October 29, 2003 pre-testamentary transfer of title to the Premises to her was unconditional were knowingly false when made.

26.      Counterclaim Defendant's representations to Elly in September and October 2003 that the October 29, 2003 pre-testamentary transfer of title to the Premises to her was unconditional were made with the intention that Elly would rely upon such representation in obtaining secured financing in connection with the Premises.

27.     In fact, Elly and 53MARC justifiably relied upon Counterclaim Defendant's representations to Elly in September and October 2003 that the October 29, 2003 pre-testamentary transfer of title to the Premises to Elly was unconditional and in reliance on such representations: (a) 53MARC obtained secured financing on numerous occasions in connection with the Premises, (b) Elly executed personal guarantees in connection with all of the secured financing transactions entered into by 53MARC in connection with the Premises and (c) Elly has expended substantial sums of her own money in order to maintain, operate and repair the Premises.

28.     As a result of Counterclaim Defendant's misrepresentations to Elly in September and October 2003 that the October 29, 2003 pre-testamentary transfer of title to the Premises to Elly was unconditional, Counterclaim Defendant fraudulently induced Elly and 53MARC to enter into the various financing transactions described in detail above and to incur damages.

29.     As a result of Counterclaim Defendant's actions, in the event that the Court determines that Counterclaim Defendant has at all times relevant remained the beneficial owner of the Premises, then Elly and 53MARC have been damaged in an amount to be determined at

trial but not less than $1,012,536.05 plus, without limitation, all amounts paid by Counterclaim Plaintiffs with respect to the Premises.[3]

### AS AND FOR A SECOND COUNTERCLAIM
#### (Unjust Enrichment)

30.    Counterclaim Plaintiffs repeat and reallege each and every allegation contained in paragraphs 1 through 29 of the Counterclaims as if fully set forth herein.

31.    In the event that the Court determines that Counterclaim Defendant has at all times relevant been the beneficial owner of the Premises, he would be wrongfully and unjustly enriched, and receive a benefit to which he was not entitled by virtue of all sums of money expended by Elly and 53MARC in connection with the maintenance and operation of the Premises from October 29, 2003 to present, plus any liability either may incur in connection with the Foreclosure Action with applicable interest thereon.

32.    Accordingly, in the event the Court determines that the Counterclaim Defendant has at all times relevant been the beneficial owner of the Premises, Elly and 53MARC should be awarded a judgment in an amount to be determined at trial but not less than $1,012,536.05 plus, without limitation, all amounts paid by Counterclaim Plaintiffs with respect to the Premises with applicable interest thereon.

### AS AND FOR A THIRD COUNTERCLAIM
#### (Breach of Contract)

33.    Counterclaim Plaintiffs repeat and reallege each and every allegation contained in paragraphs 1 through 32 of the Counterclaims as if fully set forth herein.

34.    On September 30, 2003, Counterclaim Defendant executed an Assignment of Leases (the "Assignment Agreement") in favor of Elly which provided, in pertinent part, that:

> **KNOW THAT** for valuable consideration, FRED GARCIA, Father, having an address at 53 Montrose Avenue, Brooklyn, New York 11206 ("Assignor"), hereby assigns unto ELLY GARCIA,

---

[3]    Contemporaneously with the filing of this Answer and Counterclaims, Elly and 53MARC are filing proofs of claim and an Adversary Complaint against Freddy A, Garcia seeking to declare the debt owed to them non-dischargeable pursuant to Bankruptcy Code §523(a)(2)(A).

> Daughter, having an address at 54 Montrose Avenue, Brooklyn, New York 11206 ("Assignee"), all right, title and interest of the lessors under those certain Leases . . . which Leases affect the premises known as 53 Montrose Avenue, in The City of New York, New York . . .
>
> **TO HAVE AND TO HOLD** the same unto Assignee and the, heirs, Executors, administrators, legal representatives, successors and assigns of Assignee from the date hereof for the rest of the terms of said Leases, as said Leases may be modified or extended.
>
> Assignor represents and warrants that the Leases are in full force and effect, that Assignor has not assigned or encumbered the Leases, and that Assignor has the power and authority to assign the Leases to Assignee.

35.      Contrary to the express terms of the Assignment Agreement, after September 30, 2003, Counterclaim Defendant continued to collect rents from various tenants at the Premises without remitting same to Elly or 53MARC.

36.      As a direct and proximate result of Counterclaim Defendant's breach of the Assignment Agreement, the rents collected from the tenants at the Premises were insufficient to cover the costs of maintaining and operating the Premises, necessitating Elly and 53MARC to advance their own monies to cover same.

37.      As a direct and proximate result of Counterclaim Defendant's breach of the Assignment Agreement, Elly and 53MARC have incurred damages and there is now due and owing from Counterclaim Defendant to Elly and 53MARC an amount to be determined at trial but not less than $1,012,536.05 plus, without limitation, all amounts paid by Counterclaim Plaintiffs with respect to the Premises with applicable interest thereon.

## AS AND FOR A FOURTH COUNTERCLAIM
### (Conversion)

38.      Counterclaim Plaintiffs repeat and reallege each and every allegation contained in paragraphs 1 through 37 of the Counterclaims as if fully set forth herein.

39.      By continuing to collect rents from tenants at the Premises following his execution of the Assignment Agreement, Counterclaim Defendant has wrongly converted property belonging to the Elly and/or 53MARC.

40.     Elly and/or 53MARC have suffered and continue to suffer damages as a result of Counterclaim Defendant's wanton and willful conversion.

41.     Accordingly, Elly and /or 53MARC are entitled to judgment against the Counterclaim Defendant equal to an amount to be determined at trial of all rents collected by Counterclaim Defendant after September 30, 2003 plus all direct and consequential damages from his conversion of said funds, together with interest, costs and fees with applicable interest thereon.

**ELLY AND 53MARC HEREBY DEMAND A JURY TRIAL IN CONNECTION WITH THEIR COUNTERCLAIMS.**

WHEREFORE, defendants/counterclaim plaintiffs Elly Garcia-McCoy and 53 Montrose Ave. Realty Corp. demand judgment dismissing the Adversary Complaint against them and awarding them a judgment on their Counterclaims in an amount to be determined at trial, together with such other relief to this Court seems just, proper and equitable.

Dated:  New York, New York
        August 18, 2015

                            **HALPERIN BATTAGLIA BENZIJA, LLP**
                            *Counsel to Defendants/Counterclaim Plaintiffs Elly*
                            *  Garcia-McCoy and 53 Montrose Ave. Realty Corp.*

                    By:     */s/Walter Benzija*
                            Walter Benzija, Esq.
                            Neal W. Cohen, Esq.
                            40 Wall Street, 37th Floor
                            New York, New York 10005
                            Tel: (212) 765-9100
                            Fax: (212)765-0964
                            wbenzija@halperinlaw.net
                            ncohen@halperinlaw.net